## ETHELYN T. PHIPPS, Appellant, v. JOHN MARKIN and BOOKER SANDERS, Respondents.

Springfield Court of Appeals, January 18, 1919.

1. **APPEAL AND ERROR:** Admission of Incompetent Testimony: Reversible Error. In replevin suit by wife to recover automobile, issue being whether she was holding title in fraud of creditors, admission of incompetent testimony, with reference to plaintiff's husband putting his property in his wife's name, was reversible error.

2. **EVIDENCE: Fraudulent Transfers: Reputation.** In replevin suit by wife to recover automobile, issue being whether she was holding legal title in fraud of creditors, evidence that it was the understanding with the people that plaintiff's husband had put his property in his wife's name was incompetent.

3. ————: **Declarations of Husband: Admissibility.** In replevin suit by wife to recover an automobile, issue being whether she was holding legal title in fraud of creditors, statement of her husband that he had put his property in his wife's name was incompetent, having been made subsequent to the deed, in the wife's absence, and without her knowledge.

4. **FRAUDULENT CONVEYANCES: Jury Question: Title.** In replevin, in which defendants claimed title to automobile through an execution sale against plaintiff's husband, and in which issue was whether plaintiff had been the fraudulent recipient, *held* that the court did not err in refusing peremptory instruction for plaintiff.

5. ————: **Husband and Wife: Transactions Between: Validity as to Creditors.** Where the rights of creditors are involved, transactions between husband and wife will be closely scrutinized, especially where the husband continues to handle the property which he transferred as agent for his wife.

6. ———— **Fraudulent Transfer of Property. Burden of Proof.** In replevin, defendants, who claimed title by virtue of purchase of automobile at an execution sale against plaintiff's husband, had the burden of showing that plaintiff held legal title in fraud of her husband's creditors; plaintiff having made a prima-facie case of ownership.

7. ————: **Title: Instructions.** In replevin suit by wife to recover an automobile, issue being whether she was holding legal title in fraud of creditors, *held*, that the court should have instructed that plaintiff made a prima-facie case and should recover, unless her title was destroyed on the alleged ground of fraud, and that the burden of proving such fraud was on defendants.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Duncan & Corbett* for appellant.

*N. C. Hawkins* and *Ward & Reeves* for respondents.

FARRINGTON, J.—This is an action in replevin, instituted by the plaintiff to recover from defendants an automobile. The petition and affidavit are in the usual form, the plaintiff claiming title and possession to the car and asking judgment.

The answer of the defendants admits they were in the possession of the car, and states that its value is $400, and denies each and every allegation in the petition and affidavit, praying for judgment. Further answering, they aver that the plaintiff at the time of the filing of the petition was not entitled to the possession of the automobile, and that she had no ownership or title herein, and that the only claim to ownership was the result of a scheme on the part of the plaintiff and her husband, J. M. Phipps, to defraud their creditors, and that said J. M. Phipps had been the owner of this automobile, and while such, the same was sold by the Sheriff of the County of executions against him and that these defendants bought at the execution sale.

That on the filing of the replevin suit the plaintiff gave bond, and that the automobile was turned over to her and taken out of the County and has been in her possession ever since she took it under said replevin bond. Defendant set up ownership and right of possession to the car and demand a return thereof or its value of $400, together with $200 damages.

The jury returned a verdict for the defendants, and assessed the value of the car at $400, from which judgment the plaintiff appeals.

The following is a summary of the evidence introduced in the case: The plaintiff testified that she was the wife of J. M. Phipps, and that she acquired the automobile on January 26, 1917, having purchased it from Myrtle Duncan, of Caruthersville, Mo., and that she bought it taking it as part payment for the sale of a certain tract of land which she owned in Pemiscot County and which she sold on the above date to Mrs. Duncan; she testifying that she was the

sole owner of the land which was sold to Mrs. Duncan and in part payment of which she received the car; that she had purchased this land out of her own funds from one T. L. Taylor, paying for it out of funds which she inherited from her father's estate, and part of it from the sale of hand-painted china and needlework. That she instituted this suit through her husband, John M. Phipps, as her agent. Plaintiff here rested her case.

The defendants then introduced the Sheriff, who testified that he levied upon and sold the automobile to the two defendants; that when he levied he took it from J. E. Duncan, the attorney for the plaintiff, who was the husband of Myrtle Duncan, from whom Mrs. Phipps claims to have gotten the car; that Mr. and Mrs. Phipps had moved away from the County and had been gone several weeks when he levied on this car. Defendants attempted to go into the question of a fraudulent acquisition of her husband's property, asked the sheriff this question: ''Q. Tell the jury what you know, if anything, about J. M. Phipps putting his property in his wife's name?'' Mr. Duncan, attorney for plaintiff: ''We object, if the court please, as to anything J. M. Phipps did.'' By the Court: ''The court will let him answer.'' Exception was saved. ''A. That is the understanding with the people, I don't know.'' ''Q. Do you know whether or not he was hard pressed at the time?'' Objection was made because Phipps was not a party—which was answered over the exceptions of the plaintiff in the following way: ''There were executions against it.'' ''Q. State if there was also an execution against the plaintiff in this case.'' ''A. I understand so, I had none.'' This witness on Cross-Examination, testified that Duncan had told him it was Dr. Phipps' car that was in his, Duncan's, possession at his garage.

Defendant Markin testified concerning the use of the car during the time after he bought it under execution sale on a judgment against Dr. Phipps, and

up to the time it was taken from him on plaintiff's replevin writ. He testified that Dr. Phipps came back and took the car under the replevin writ, and that his wife did not come. It was stated in the testimony that Mrs. Phipps was a resident of the State of Indiana. He also testified as to the value of the car, and that he was claiming title to it by virtue of the execution sale against Dr. Phipps; and that Duncan, attorney for the plaintiff, gave notice to prospective buyers that it was Mrs. Phipps' car.

Saunders, the other defendant, testified that Dr. Phipps drove the car away; that he claimed title to the car as a purchaser at the execution sale by the Sheriff on an execution against the husband of plaintiff, Dr. Phipps. Defendants then introduced a witness by the name of Finch, who testified that he was personally acquainted with Dr. Phipps and his wife, the plaintiff, and who testified about land owned by Dr. Phipps concerning which there is no definite description, neither does he testify that the land which plaintiff claimed to have sold to Mrs. Duncan was land that she acquired from her husband. He failed utterly in his testimony to identify any land which was transferred from Dr. Phipps to his wife. He was also permitted to testify as follows: "We," referring to himself and Dr. Phipps, "had a law suit," in which he stated that Dr. Phipps told him that the parties suing him could not get anything because he had made everything over to his wife. He further testified that when this conversation took place plaintiff was not present and knew nothing about it; and further testified that he did not know anything about any land that Mrs. Phipps had acquired by a deed from Taylor.

Duncan, attorney for plaintiff, and husband of Myrtle Duncan who sold the automobile to plaintiff, testified that the plaintiff was not present when the suit was brought, and that in making the trade for the automobile he, Duncan, acted for his wife and Dr. Phipps had acted for his wife, the plaintiff. He further

testified that he thought the records showed that Dr. Taylor conveyed the land to Mrs. Phipps, and that Dr. Phipps conveyed it to Taylor. That he had nothing to do with the transaction and did not know why it was done, and that he supposed Mrs. Phipps never saw the automobile, and that it never left his possession or had been delivered to Mrs. Phipps prior to the time it was seized under execution by the sheriff.

I. At the conclusion of the testimony, the plaintiff asked that all testimony with reference to transfer of property from Dr. Phipps to Taylor and from Taylor to this plaintiff be excluded, because it had not been shown that the debt mentioned, or any of them, accrued before any of these transfers were made.

Plaintiff then offered an instruction asking the court peremptorily to instruct the jury that under the law and the evidence their finding should be for the plaintiff, which was refused.

Plaintiff asked three instructions, which were given; the first, telling the jury that persons buying at an execution sale acquired only the title of the defendant in the execution; and that the defendants claimed title to this automobile by virtue of the sale under the execution against Dr. Phipps, and that if the jury finds that the automobile was the property of plaintiff and not the property of her husband, Dr. Phipps, at the time it was sold under the execution, their finding must be for the plaintiff.

The second instruction told the jury that if they found the plaintiff was the owner of a tract of land and that she by herself or by agent, traded it as a part of the consideration therefor for the automobile in question, and had not sold or disposed of the automobile at the time of the institution of the suit, their finding must be for the plaintiff.

The third instruction informs them that under the law in this State a married woman has the right to

own her own property and to place it in the hands of
her husband to act as her agent.

The court gave two instructions at the instance of
the defendants, to which there was objection made and
exceptions saved by the plaintiff. They are as follows:

"The court instructs the jury that under the law
the plaintiff must recover, if she recovers at all, upon
the strength of her own title to the property in ques-
tion and not upon the weakness of the title of the
defendants therein, and unless you find and believe
by the preponderance and greater weight of the testi-
mony that plaintiff is the owner of the automobile in
question, you will find the issues for the defendants."

"The court further instructs the jury that in
order to defeat plaintiff's recovery in this case it is
not necessary for the defendants to show title to the
property in themselves, but before you can find for
the plaintiff, you must believe and find by the greater
weight and preponderance of the testimony that the
plaintiff herein is the absolute owner of the property
in question."

The verdict of the jury was that the defendants
were the owners, and entitled to the possession of the
automobile in question, and that it was of the value of
$400. A judgment was rendered in accordance with
the finding of the jury, and after an unavailing motion
for a new trial, the plaintiff appealed.

This judgment must be reversed and remanded
because of the admission of incompetent testimony
which was introduced by defendants over the objection
and exception of plaintiff. The court permitted the
sheriff, over the objection and exception of plaintiff,
to state that it was the understanding with the people
that Dr. Phipps had put his property into his wife's
name when he was hard pressed by creditors. We
have quoted the testimony in the statement. The wit-
ness Finch was permitted to testify, over the objection
of plaintiff, that Dr. Phipps had told him that he had
put his property in his wife's name to keep it from

getting away from him for what he owed; the testimony of this witness showed that this statement was made, if relative to this land at all, subsequent to its being deeded to plaintiff, and in her absence, and was a conversation which the witness said the wife knew nothing about. This, of course, is wholly incompetent testimony, and prejudicial to plaintiff's cause of action.

As this case must be retried, we suggest that the parties make the evidence clear on the question of whether the transfer or property by plaintiff's husband to her was prior to the making of the debts of the two defendants who bought in this automobile at an execution sale against Dr. Phipps. On the other hand, if the evidence shows that the property turned over to plaintiff by her husband was prior to the making of the debts of these defendants, then in order to be a fraud on them under our statutes concerning fraudulent conveyancing, the transfer must have been made with the intent on the part of the grantor to get rid of his property with a view of creating debts, and to place his property out of his hands so that they could not be collected, which intent must be participated in by the grantee. [See Cole v. Cole, 231, Mo. 1. c. 259, 260, 261, 262; 132 S. W. 734; Scharff v. McGaugh, 205 Mo. 1. c. 364, 103 S. W. 550.]

We are unwilling to hold with the plaintiff that the court erred in refusing a peremptory instruction to find in her favor, because the transaction is one where the rights of creditors are involved, and in transactions between husband and wife, the law strictly enjoins that such transactions be closely scrutinized as the right of marital relation affords a convenient cover to protect the property of a debtor from his creditors, and especially is this true where the husband continues to handle the property which he transferred, as agent for his wife. [Holloway v. Holloway, 103 Mo. 1. c. 282, 15 S. W. 536.]

II.  Defendants' instructions quoted should not have been given in this case, because the issue made by both parties was whether the wife had been the fraudulent recipient of the husband's property; the defendants claiming title to the automobile through an execution sale against the husband of plaintiff, charging the automobile had been received in a trade for a piece of land which belonged to the husband and had been fraudulently conveyed through a third party to his wife; therefore, the husband was the real owner of the automobile and that his wife was holding it in fraud of his creditors.  The testimony of the wife tending to show that the legal title to this property was in her, and that she had purchased the land with her own funds, and had acquired the automobile in a trade for her land.  The legal title being in the wife, the defendants attempted to show the fraud, as above set out.  The issue, therefore, was, whether this property, the legal title of which was in the wife, was held in fraud of her husband's creditors.  The defendants were asserting fraud, which put the burden of proof upon them to sustain that issue.  The wife having made the prima-facie case of ownership, and there being no issue made tending to destroy the prima-facie case except the affirmative charge of fraud made by the defendants, the instructions asked by the defendants and given by the court left this burden of proving fraud by the defendants out of the case.  The rule that the burden is on the plaintiff to make his cause does not conflict with the rule that the burden is on a defendant to prove an affirmative defense of fraud. [Kent v. Miltenberger, 13 Mo. App. 503, 515;  Gray's Harber Commercial Co. v. Bank, 74 Mo. App., 633, 638; Dixon v. McDonnell, 92 Mo. App. 479, 484;  Crumpley v. Railroad, 111 Mo. 152, 161, 19 S. W., 820.]

On the record before us, the jury should have been instructed that plaintiff made a prima-facie case and should recover unless her title was destroyed on the

alleged ground of fraud, and that the burden of proving such fraud is on the defendants.

For reasons heretofore notes, the judgment is reversed and the cause remanded. *Sturgis, P. J.,* and *Bradley, J., concur.*